Opinion for the Court filed by Circuit Judge BROWN.
Concurring opinion by Circuit Judge ROGERS.
BROWN, Circuit Judge:
Today we bring resolution to nearly a decade’s worth of litigation. As explained in Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 677-78 (D.C.Cir.2009) (Atherton II), juror officer Suzanne Bailey-Jones unceremoniously removed Peter James Atherton from grand jury service after Assistant United States Attorney (AUSA) Daniel Zachem reported the complaints of other members of the grand jury. The District Court concluded appellees Bailey-Jones and Zachem were entitled to qualified immunity and granted their respective motions to dismiss. Because Atherton has failed to convince us that he had a clearly established constitutional entitlement to a more comprehensive termination process when he was excluded from jury service, we affirm.
I
We will not rehearse the facts already discussed at length in Atherton II, where we dismissed the bulk of Atherton’s case save his due process claims against Bailey-Jones and AUSA Zachem. Because “qualified immunity ... was not addressed below and was only thinly briefed on appeal,” we remanded the matter, emphasizing that the District Court would:
retain[ ] the discretion to decide “which of the two prongs of the qualified immunity analysis should be addressed first” — (1) whether the alleged facts show that the officials’ conduct violated a statutory or constitutional right and (2) whether that right was clearly established at the time of the incident — “in light of the circumstances in the particular case at hand.”
Id. at 690-91 (quoting Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)); see also Reichle v. Howards, — U.S. -, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (noting that this “approach comports with [the Court’s] usual reluctance to decide constitutional questions unnecessarily”).
If the District Court chose to resolve matters on the second prong and ask whether the procedural due process owed a grand juror prior to the termination of a protected interest was clearly established at the time of dismissal, we recognized that Atherton’s burden was great, but not insurmountable. “The question presented ... boils down to this: Has [Atherton] proven that, under the three-part balancing analysis of Mathews [v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ] and the precedents that have applied it, he had a ‘clearly established’ right to process more comprehensive than that provided by the District?” Atherton II, 567 F.3d at 691 (quoting Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist., 149 F.3d 971, 984 (9th Cir.1998)).
Foregoing a formal discussion of Mathews, the District Court on remand concluded:
*515 Given (1) the absence of any legal precedent at the relevant time establishing the alleged due process right, (2) the absence in 2001 of any formal procedures for (and judicial involvement in) removing grand jurors in Superior Court, (3) the apparent informal practice of delegating grand juror removal decisions to the Juror Officer, and (4) the Juror Officer’s job description implicitly authorizing the practice, the Court finds that, even if a constitutional right exists in serving on a .grand jury, defendants could not have reasonably known that their removal of plaintiff from the grand jury in April 2001 violated any clearly established statutory or constitutional rights of which a reasonable person would have known.
Atherton v. District of Columbia Office of the Mayor, 813 F.Supp.2d 78, 84 (D.D.C. 2011) (Atherton III) (internal quotation marks omitted).
We agree with the District Court in substance. Assuming arguendo that Mathews requires a judicial determination and formal process prior to dismissal from a grand jury, no reasonable official in Appellees’ position would have understood those requirements to be “clearly established” as a constitutional matter.
II
“Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.” Reichle, 132 S.Ct. at 2093. “Clearly established” does “not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.” Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). To determine whether the state of the law was “beyond debate,” we look to “cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view — if there is one.” Bame v. Dillard, 637 F.3d 380, 384 (D.C.Cir.2011) (citation and internal quotation marks omitted). If the facts are truly novel and there are no relevant cases, “officials can still be on notice that their conduct violates established law” if their “conduct violated ‘clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Hope v. Pelzer, 536 U.S. 730, 741-42, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (finding an obvious violation of Eighth Amendment where inmate was handcuffed to hitching post, once for seven hours without regular access to water or bathroom breaks).
Whether a government official is entitled to qualified immunity “generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.” Messerschmidt v. Millender, — U.S. - 132 S.Ct. 1235, 1245, 182 L.Ed.2d 47 (2012) (internal quotation marks omitted); see also Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (“[A]n allegation of malice is not sufficient to defeat immunity if [official acted in] an objectively reasonable manner.”). It is thus axiomatic that qualified immunity “provides ample protection to all but the plainly incompetent or those who knowingly violate the law.” Briggs, 475 U.S. at 341, 106 S.Ct. 1092.
Here, the procedural due process owed a grand juror seems as unclear today as it was over a decade ago when Atherton was dismissed from jury service on April 11, 2001. The parties have cited no cases directly on point and this Court has found *516 just one of passing resemblance.[1] Atherton instead argues by analogy, relying chiefly on United States v. Brown, 823 F.2d 591 (D.C.Cir.1987).
The trial judge in Brown had removed a juror who confessed an inability to honor or apply the R.I.C.O. conspiracy act as written. See id. at 594-95. Reversing the conviction, we held that a criminal defendant’s Sixth Amendment right to a unanimous petit jury means “a court may not dismiss a juror during deliberations if the request for discharge stems from doubts the juror harbors about the sufficiency of the government’s evidence.” Id. at 596. Atherton contends that the holding in Brown is apposite to situations involving dismissal of grand jurors. He maintains that Brown makes clear that “grand jurors cannot be dismissed unless and until a judge makes a finding of good cause shown, and implicitly, only after notice and opportunity to be heard.” Reply Br. at 15. This bold claim is simply untenable.
As a threshold matter, Brown does not speak to process. In concluding that the Sixth Amendment categorically barred the removal of certain jurors, we never opined on what procedures are required in the “many circumstances” where courts may freely use Federal Rule of Criminal Procedure Rule 23(b) to discharge a juror. Brown, 823 F.2d at 597. Nor was it our intention to speak to process. To the contrary, we held “only that Rule 23(b) is not available when [ ] evidence discloses a possibility that the juror believes [ ] the government has failed to present sufficient evidence to support a conviction.” Id. (emphasis added). The pointed reference to Rule 23 underscores Brown’s limited reach since Rule 23 implicates only trial juries, not grand juries. Simply put, nothing in Brown suggests grand jurors had a clearly established right to the “[jjudicial [hjearing [bjefore [dismissal” that Atherton believes Mathews requires. Reply Br. at 15.
But even if Brown spoke clearly to the question of process, it is simply inapposite. While both grand and petit juries “aet[ ] as a vital check against the wrongful exercise of power by the State and its prosecutors,” Campbell v. Louisiana, 523 U.S. 392, 399, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) (internal quotation marks omitted), the District Court correctly noted that grand juries exist as “an institution separate from the courts” for which, “as a general matter at least,” no “ ‘supervisory’ judicial authority exists.” Atherton III, 813 F.Supp.2d at 82 (quoting *517 United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992)).
It may well be true that a decision in one context could prove persuasive or even controlling in the other, see Batson v. Kentucky, 476 U.S. 79, 84 n. 3, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (“The basic principles prohibiting exclusion of persons from participation in jury service on account of their race are essentially the same for grand juries and for petit juries” (internal quotation marks omitted)), but for present purposes at least, a principle “clearly established” for a petit jury cannot be seamlessly applied to the grand jury — especially where the translation implicates a difference as significant as procedure and, concomitantly, the grand jury’s relationship with the court.
For one thing, the function of a grand jury is “quite different from that of a petit jury.” In re Sealed Case, 877 F.2d 976, 982 (D.C.Cir.1989). With a greater number of jurors, no requirement of unanimity, and the safeguard of an eventual petit jury, see United States v. Mechanik, 475 U.S. 66, 73, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (“[T]he petit jury’s verdict rendered harmless any conceivable error in the [grand jury’s] charging decision that might have flowed from the violation.”), it is not clear whether the reasoning underlying our Sixth Amendment holding in Brown would apply with the same force here — if at all. At bottom, the suggestion that all these leaps in inferential logic — Sixth Amendment to Fifth Amendment, petit jury to grand jury, Rule 23 to Rule 6, criminal defendant to juror, etc.' — constitute “clearly established” doctrine beggars belief.[2]
Ill
For the above reasons, the District Court’s decision to find qualified immunity and grant Bailey-Jones’s and Zachem’s respective motions to dismiss is

Affirmed.

. United States v. Peters, 791 F.2d 1270 (7th Cir.1986), superseded by statute on other grounds as stated in United States v. Guerrero, 894 F.2d 261, 267 (7th Cir.1990), implicated Rule 6 of the Federal Rules of Criminal Procedure, the Federal analogue to the Superior Court's Rule 6. The criminal defendant in Peters had argued “that an adversarial hearing was necessary to determine whether the grand juror’s excusal had prior judicial approval or was simply an exercise of arbitrary prosecutorial discretion.’’ Id. at 1283. The Seventh Circuit quickly dismissed the argument. Holding that no such hearing was required, the court stated:
Rule 6(g) does not require an adversarial hearing before the court may dismiss a grand juror. Nor does Rule 6(g) require a court to notify the subject of the investigation that a grand juror has been dismissed or to explain the reason for the dismissal.
An adversarial hearing would disrupt and delay grand jury proceedings, and therefore a petitioner requesting such a hearing bears a heavy burden.
Id. Peters, however, is distinguishable insofar as it involved a juror’s request to be excused from the grand jury, a magistrate judge's approval of the excusal request, and, as might be expected given the facts of the case, an emphasis on the rights of the criminal defendant as opposed to those of the juror.

. Nor can we say appellees acted so brazenly as to violate Atherton's clearly established rights. See Hope, 536 U.S. at 741-42, 122 S.Ct. 2508. To the contrary, the Superior Court's ad hoc administration of the juror removal process only reaffirms the "objective legal reasonableness” of Appellees’ actions. Messerschmidt, 132 S.Ct. at 1245.
To be clear, we do not mean to suggest that informal policies and practices in government offices can defeat or otherwise undermine what is clearly established constitutional or statutory law. We mean only that informal practices of this sort are sometimes the symptoms of doctrinal confusion, not the cause. Such is plainly the case here.