793 So.2d 308 (2001)
STATE of Louisiana, Appellant,
v.
James DIVERS, Appellee.
No. 34,748-KA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 2001.
Rehearing Denied August 16, 2001.
*310 Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Madeleine M. Slaughter, Assistant District Attorney, Counsel for Appellant.
Charles L. Kincade, Monroe, R. Neal Walker, New Orleans, G. Benjamin Cohen, Counsel for Appellee.
Before STEWART, GASKINS and DREW, JJ.
STEWART, J.
The defendant, James Divers, was convicted of first degree murder, and sentenced to death. On September 5, 1996, the Louisiana Supreme Court reversed the conviction. On September 20, 1999, Divers filed a motion to quash the original 1988 indictment alleging "Historic, Systematic Discrimination Against African-Americans and Women in the Selection of Grand Jury Forepersons." The trial court granted the motion to quash the indictment. The state now appeals. For the reason set forth herein, the trial court's quashing of the indictment is affirmed.

FACTS
James Divers is one of the defendants in the "Moon Lake murders." On April 12, 1988, two men were found bound and shot at the Moon Lake Recreational Area. One was dead, and the other died shortly thereafter. A few days later, the defendant and his cousin, Everett English, were arrested for the crime and, on July 6, 1988, a grand jury indicted the defendant for first degree murder. The grand jury that indicted *311 Divers was comprised of six whites and six blacks. The foreperson was a white male.
Prior to trial, Divers filed a motion to quash the grand jury indictment, alleging racial discrimination in the selection of the grand jury. The motion listed three claims:
1. That the method and manner of the selection of the grand jury venire does not insure the presence and participation of a fair cross-section of the community and dilutes the potential presence of black persons on the general venire.
2. That the Clerk of Court or the Jury Commission for Ouachita Parish violated defendant's constitutional rights, when the names of those persons chosen for inclusion on the venire were excluded because they had served on a grand or petit jury in this parish within the last two years.
3. That the Clerk and/or Jury Commission as a matter of general policy exclude from the general venire the names of individuals engaged in certain occupational classes, namely attorneys and physicians.
A hearing was held on the defendant's motion, and on November 17, 1988, in a written ruling, the trial court dismissed the defendant's motion to quash. The trial court's ruling also made several findings of fact, including facts as to the composition of the grand jury, and the population and racial composition of Ouachita Parish at the time of the indictment.
Thereafter the matter went to trial, and a jury found the defendant guilty. On September 12, 1991, the trial court sentenced Divers to death by lethal injection. The case was appealed directly to the Louisiana Supreme Court, which reversed the conviction. State v. Divers, 94-0756 (La.9/5/96), 681 So.2d 320.
The state proceeded on the original July 6, 1988 indictment. On September 20, 1999, Divers filed a motion to quash the indictment styled: "Motion to Quash Indictment Due to Historic, Systematic Discrimination Against African-Americans and Women in the Selection of Grand Jury Forepersons."
On February 25, 2000, the state filed "State's Answer to Defendant's Motion to Quash Indictment Filed 9/20/99" and a motion to dismiss the defendant's motion to quash. Divers filed a motion to recuse all of the district court judges for the motion to quash only, because all would be possible witnesses in the hearing. The state concurred, and the Honorable Graydon K. Kitchens, Jr., was appointed judge pro tem to hear the motion to quash.
The trial court granted the state's motion, ruling that the defendant would be precluded from going "back to the beginning to challenge the indictment or litigate other matters which are classified as pretrial motions, which relate to something that has previously been litigated or to something that the law has changed." To this ruling, the defendant sought writs to this court. State v. Divers, No. KW99-33,625 (La.App.2d Cir.1/20/20). This court reversed the trial court, and held that the defendant was not precluded from filing and litigating the issues in the earlier trial, particularly in light of the decision in Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998). The state sought reconsideration of this court's ruling, which was denied. State v. Divers, # KW00-33,795 (La.App.2d. Cir.2/28/00).
The hearing on the defendant's motion to quash the indictment was tried intermittently from February 29, 2000 to May 23, 2000. The trial court had limited the scope of the inquiry as to the selection of grand jury forepersons from 1968 to the 1988 grand jury which indicted the defendant. *312 The trial court left open the question as to whether the composition and selection of grand jury forepersons since 1988 were admissible, and allowed the evidence of subsequent grand jury forepersons as a proffer.
The defendant called 30 witnesses, most of whom had been grand jury forepersons from 1968 to 1998. The evidence established that of the 41 grand juries empaneled from 1968 to 1988, all had African-Americans on the grand juries. The evidence further established that of the 41 grand jury forepersons picked, none were black.
The defendant called as an expert witness Joel Devine, who was tendered as an expert statistician. Devine testified that considering the racial composition of the grand jury venires from 1968 to 1988, the odds of no black being selected as a foreperson, in a random selection, ranged from 1 in 30,000 to over 1 in 10,000,000.
At the close of Diver's case, the trial court ruled that the defendant had proven a prima facie case of purposeful discrimination in the selection of the grand jury forepersons from 1968 to 1988. The trial court shifted the burden of proof to the state.
The state adduced ten witnesses, being the judges still living that appointed grand jury forepersons from 1968 to 1998. Six of the judges that selected grand jury forepersons from 1968 to 1988 were deceased at the time of this trial.
On August 29, 2000, the trial court issued a written ruling which found the following:
1. The trial court did not consider, in its ruling, the evidence of the selection of grand jury forepersons after the defendant's 1988 indictment.
2. The defendant had established a prima facie case of purposeful discrimination in the selection of the grand jury foreperson in his case, by showing:
A. Women and African-Americans are a distinct class, singled out for different treatment.
B. The degree of underrepresentation has occurred over a significant period of time. From 1968 to 1988 41 grand jury forepersons were selected in Ouachita Parish. Zero were African-American and 6 were women.
C. That the selection procedure for grand jury forepersons was susceptible to abuse.
3. The trial court accepted the findings of fact by Judge Ingram in his 1988 ruling, where Judge Ingram found that there were 68,558 registered voters in Ouachita Parish in 1988, and 74% were white and 25% were African-Americans. The Grand Jury Venire in March 1988 contained 26 males and 24 females, and 36(72%) were white and 14(28%) were African-American. The grand jury that indicted the defendant was composed of 5 males and seven females, 6 were white and 6 were African-American. The foreperson was white. (The issue in the 1988 hearing, discrimination in the selection of the grand jury venire, was not at issue in the 2000 hearing, and the August 29, 2000 ruling did not disturb the 1988 ruling that there was no finding of discrimination in the selection of the grand jury venire)
4. The trial court found that the defendant had failed to show a degree of underrepresentation of women to establish a prima facie case of purposeful discrimination in the selection of women as forepersons.

*313 5. The trial court did find that the defendant had made the requisite showing of a prima facie case of discrimination against African-Americas in the selection of forepersons, in that zero out of forty-one selected was a clear showing of underrepresentation.
6. The trial court found that the presumption of racially discriminatory conduct may successfully be rebutted by testimony that establishes the use of racially neutral selection procedures. The trial court noted that ten past and present judges testified about their selection criteria, and found that they used some "criteria that at best could be classified as general or vague." The trial court found that "there were no objective criteria or guidelines used by the Judges." The trial court found that the "State has failed to rebut the prima facie showing and resulting presumption of discrimination against African-Americans in the selection of forepersons in this case."
7. The trial court ordered that the July 20, 1988 indictment against the defendant be quashed.
8. The trial court also informed the state that nothing in its ruling would prevent the state, in its discretion, from obtaining a superceding indictment to cure any defect in the previous indictment.
This appeal by the state followed.

DISCUSSION
The state advances several arguments in support of its contention that the trial court erred in granting the defendant's motion to quash. Particularly, the state argues that the 1988 ruling on the motion to quash bars the defendant from trying to again quash the indictment during the retrial. The state asserts that the issue of the composition of the grand jury was addressed in 1988, and that the selection of the foreperson involves the composition of the grand jury. Secondly, the state established that there was no "purposeful discrimination" or "discriminatory intent" by the judges in selecting the grand jury forepersons.
In contrast, Divers asserts that the state has advanced no argument to overturn the trial court's ruling. Specifically, the state failed to produce evidence to show that the pattern of under-representation was the result of "racial neutral" and "objective" criteria in selecting forepersons. Prior to its amendment in 1999, La.C.Cr.P. art. 413 read, in pertinent part:
I. The grand jury shall consist of twelve persons plus a first and second alternative for a total of fourteen persons qualified to serve as jurors, selected or drawn from the grand jury venire.
J. In parishes other than Orleans, the court shall select one person from the grand jury venire to serve as foreman of the grand jury. The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury. The envelope containing the remaining names shall be replaced into the grand jury box for use in filling vacancies as provided in Article 415.

Does the 1988 Ruling Bar the 2000 Motion?
The state's first argument is to reargue that the defendant should not have been able to file a new motion to quash based on problems with the selection *314 of the grand jurors that indicted the defendant.
It is ironic that the state's argument that the defendant should not be able to file a new motion to quash, is based on the ruling in Campbell v. Louisiana, supra, which is also the case most cited in support of the quashing of the indictment. The basis for this argument is that since Campbell v. Louisiana, supra, held that the selection of a grand jury foreperson in Louisiana is also the same as the selection of the grand jury, then the defendant already has had a hearing on the selection of the grand jury in 1988, and he cannot relitigate the issue.
However, this argument has several problems. The first problem is that this court has already ruled on the issue twice. Secondly, although the selection of grand jury forepersons is regarded in the same manner as the selection of grand jurors, the federal and state courts have always considered those to be two separate issues. The U.S. Supreme Court in Campbell, supra, held that the discrimination as to one grand juror is as equally damaging to the system as the selection of the entire grand jury. This distinction is important in that while the treatment of discrimination as to the grand jury foreperson is given the same legal consequence as discrimination as to the entire grand jury, each matter is treated as a separate legal issue for the purposes of litigation.
Further, the issue of selecting the grand jury forepersons was not raised, and never was addressed or ruled on in the 1988 hearing. That hearing focused only on the general selection process of the grand jury venire, and how the jury commission excluded certain exempt professionals from the jury venire. As a result, the issue of selecting grand jury forepersons has never been adjudicated.
Moreover, the witnesses and the evidence in the 1988 and 1999 hearings are different. In 1988, the defendant had six witnesses, the current and former clerks of court, and four current and former jury commissioners. The only witness in the 1999 hearing who testified in the 1988 hearing was the current clerk of court. Some of the jury venire lists used in the 1988 hearing were used in the 2000 hearing, but in 1988 the lists were offered in an attempt to prove that African-Americans and professionals were being excluded from the jury venire. In 2000, the lists were offered to prove the percentage of African-Americans in the general jury venire, and that they were underrepresented in the subsequent selection of forepersons. Granted, the state would have an argument if the 2000 trial court had tried to reverse or alter the findings of the 1988 trial court, but the 2000 trial court adopted the 1988 findings of fact, in their entirety, in its ruling.
Lastly, the issues raised by Divers address alleged violations of his state and federal constitutional rights. Although the equal protection claim can be waived by not filing a motion to quash before going to trial, the state has offered no jurisprudence to support a waiver or stricter scrutiny in a retrial, where the merits of the claim have not been ruled upon. The state and federal jurisprudence generally allow a defendant the right to file for, and have a hearing on, an equal protection claim that has probable merit, even after it has been litigated.
An example is Rideau v. Whitley, 237 F.3d 472 (5th Cir.2000). Rideau was indicted in 1961. He timely filed a motion to quash the indictment alleging racial discrimination in the selection of the grand jury. The equal protection issue was twice tried in state courts (1961 & 1969), and was denied. Rideau was convicted in 1961, *315 and made several trips to the U.S. and Louisiana Supreme Courts.
In 1994, Rideau filed a federal habeas corpus petition again alleging the same issue, racial discrimination in the formation of the grand jury, that had been previously ruled on several times before in state and federal courts. The U.S. District Court denied the petition, holding Rideau had not proven that his "totally unreasonable" delay in seeking relief would not prejudice the state's interests, and alternatively the district court denied Rideau's petition on its merits for failure to rebut with clear and convincing evidence the presumption that the state courts' decisions were correct.
The 5 Circuit reversed the U.S. District Court (and the state court conviction), holding that a 34-year delay was not unduly prejudicial to the state, and that the evidence clearly and convincingly rebutted the presumption that the state courts' decisions were correct.
There is very little jurisprudence on the issue of what limits are on a defendant's right to file motions after a retrial has been ordered.

Current Jurisprudence
For over a century the U.S. Supreme Court and the appellate courts of this state have struck down convictions where the state statute prevented black citizens from serving as a part of the jury system, whether as grand jurors or petit jurors. Campbell v. Louisiana, supra; Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Strauder v. West Virginia, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1879); State v. Nichols, 216 La. 622, 44 So.2d 318 (La.1950); State v. Cosey, 97-KA-2020 (La.11/28/00), 779 So.2d 675.
Regardless of his or her skin color, the accused suffers a significant injury in fact when the composition of the grand jury is tainted by racial discrimination. "[D]iscrimination on the basis of race in the selection of members of a grand jury ... strikes at the fundamental values of our judicial system" because the grand jury is a central component of the criminal justice process. Rose v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979) ... It controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision to charge a capital crime. See Vasquez v. Hillery, 474 U.S. 254, 263, 106 S.Ct. 617, 623-624, 88 L.Ed.2d 598 (1986). The integrity of these decisions depend on the integrity of the process used to select the grand jurors. If that process is infected with racial discrimination, doubt is cast over the fairness of all subsequent decisions. See Rose, supra at 555-556, 99 S.Ct., at 2999-3000. "Selection of member of a grand jury because they are one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process." Campbell v. Louisiana, supra at 1423.
Our state has come a long way from the days when the public official selecting a grand jury venire would proudly testify that he would never select an African-American for a grand jury venire. See State v. Nichols, supra. Unfortunately, the selection process for the grand jury venire and the foreperson has not significantly changed from those days. The Louisiana Supreme Court was very blunt in its criticism of the pre 1999 La.C.Cr.P. art. 413:
There is no question that at the time of trial1 in the present case Louisiana's procedure for selecting grand jury forepersons was subject to abuse according to subjective criteria which may include race and sex. Campbell v. Louisiana, *316 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998); Johnson v. Puckett, 929 F.2d 1067, 1072 (5th Cir.), cert denied, 502 U.S. 898, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991). The legislature has recently addressed this problem in light of the decision in Campbell and amended Article 413 to provide for random selection of the grand jury forepersons from the names drawn indiscriminately and by lot from the grand jury panel. 1999 Acts. 984.... Campbell makes it abundantly clear that Louisiana's procedure for selecting grand jury forepersons was subject to abuse because it placed untrammeled discretion in the trial judge on a matter of the pre 1999 version of La.C.Cr.P. art. 413(B) to select one juror on each grand jury panel.
State v. Cosey, supra at 680.
Diver's challenge as to discrimination in the selection of the grand jury forepersons is one of denial of equal protection. Campbell v. Louisiana, supra. The appellate courts have developed a procedure for determining the denial of equal protection in the selection of grand jurors and grand jury forepersons. To demonstrate an equal protection violation in the context of grand jury selection, the defendant must establish a prima facie case of purposeful discrimination by showing that:
1. Those alleged to be discriminated against belong to an identifiable group in the general population.
2. The selection process is subject to abuse according to subjective criteria.
3. The degree of underrepresentation, as shown by comparing the proportion of the group at issue found in the general population to the proportion called to serve.
See Castaneda v. Partida, 430 U.S. 482, 494-494, 97 S.Ct. 1272, 1280, 51 L.Ed. 498 (1977); State v. Cosey, supra at 680.
If the defendant meets the prima facie case, then the burden shifts to the state to rebut the prima facie case by showing that permissible racially neutral selection criteria and procedures have produced the result. Castaneda, supra; Cosey, supra; Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Rideau v. Whitley, supra.

Standard of Review
The trial court found that Divers had met his prima facie case of intentional discrimination, and that the state failed to rebut that presumption. The state now appeals the trial court's ruling. The first question is the proper standard for this court to review the ruling and findings of the trial court on defendant's motion.
Unless contrary to law, rulings of the trial court in pretrial matters are generally shown great deference absent a clear showing of an abuse of discretion. State v. Prudholm, 446 So.2d 729 (La. 1984); State v. Walters, 408 So.2d 1337 (La.1982); State v. Richardson, 33,272 (La. App.2d Cir.11/1/00), 779 So.2d 771; State v. Huff, 27,212 (La.App.2d Cir.8/23/95), 660 So.2d 529, writ denied, 96-0212 (La.5/1/97), 693 So.2d 754; State v. Dukes, 609 So.2d 1144 (La.App. 2d Cir.1992), writ denied, 93-1421 (La.12/15/95), 664 So.2d 435. Accordingly, the standard of review is whether there is a clear showing that the trial court abused its discretion in making its findings that the defendant established a prima facie case of purposeful discrimination, and that the state failed to rebut that presumption. Each will be addressed separately.

Prima Facie Case
In the present case, the trial court ruled that Divers had established a prima facie *317 case of purposeful discrimination. The trial court found that the first criteria was met in the fact that African-Americans and women are a distinct class, subject to discrimination. This issue is not in dispute. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
As to the second criteria (the system is subject to abuse), the trial court quoted Judge Charles E. Joiner, who (along with several other of the judges), testified that if someone wanted to discriminate against African-Americans, the system provided them an opportunity to do so. It is not in dispute that La. C.Cr.P. art. 413, prior to the 1999 amendments, provided for a selection process that could be entirely subjective, and subject to abuse, according to race and sex. See State v. Cosey, supra.
The state appears to argue that because the trial judges did not have access to the information regarding the sex and race of the grand jurors, that no discrimination was established. This argument overlooks the fact that proving a prima facie case does not require a showing of actual abuse by the judge. The argument also overlooks the state's own witnesses, who, all except one, testified that the method they used in selecting the foreperson was entirely subjective. Only Judge Alvin R. Sharp testified as to objectively selecting the foreperson. However, even he just set the jury venire in front of him, closed his eyes, put his finger on the page, and picked the juror where his finger landed. Divers clearly established this criteria. Lastly, the argument overlooks the statistical evidence.
The trial court felt the deciding issue was the third criteria, statistical evidence as to whether there was underrepresentation by comparing the proportion of African-Americans called to serve as grand jurors with the grand jury forepersons chosen. The trial court found that between 1968 and 1988, 41 grand juries were selected and forepersons chosen. There were zero African-Americans chosen as forepersons during that period, and six women were selected. The proffered evidence established that from 1988 to 1998, a total of 61 grand juries were empaneled and there were still zero African-Americans chosen as forepersons.
The state appears to argue that Divers failed to establish the actual number of African-Americans called to serve, and the number actually qualified to serve. The state argues:
(t)he defense could not and did not show that there were more qualified blacks present for grand jury duty who were not called other than those 47 actually selected (Appendix III), of whom we only know the qualifications of the 6 surrebuttal witnesses who testified and the 2 surrebuttal witnesses who did not serve on the grand jury ... but who testified that they were present and qualified. We do not know the qualifications of the other 41 black persons on the grand juries and we do not know that any others were present ... Therefore, out of the 41 grand juries reviewed, there were an average of 1.46 or 47/41 black persons `called to serve.'
State's brief, page 41.
It appears that the state is trying to adopt the holding of State v. Cosey, supra, where the defendant lost because he was unable to establish the racial background of the grand jurors or the foremen. We find this argument to be misplaced.
In 1988, the state defeated the defendant's motion to quash when the trial court found that the grand jury venires prior to 1988 corresponded to the racial makeup of Ouachita Parish. The state argues that the 1988 ruling is binding in this case. As a result, the trial court has now held twice *318 that the grand jury venire reflected the population of the parish. This being the case, it is inconsistent for the state to now advance an argument that it cannot be established that qualified African-Americans were sufficiently represented on the jury venires.
The state argues that the trial court was in error in finding that the state did not successfully rebut the presumption of intentional or purposeful discrimination in the selection of the grand jury foreperson.
After the trial court found that the defendant had established a prima facie case of discrimination, the state sought to rebut that presumption with testimony from all of the surviving trial court judges that had picked grand jury forepersons from 1968 to 1998. Each of the trial court judges testified about their manner of selecting forepersons. All of the judges who testified stated that they did not make their selections based on sex or race. The record does not reflect any evidence of intentional discrimination by the judges of the fourth judicial district. The state argues that the trial court committed error in not finding that the state's proof of no intentional discrimination by the judges rebutted the presumption of intentional discrimination. The state further argues that the trial court judges gave race neutral reasons for selecting grand jury forepersons other than qualified black citizens, and that this was enough to rebut the presumption.
The jurisprudence does not support the state. As the trial court noted in its ruling, the U.S. Supreme Court has held more than once that affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion. Alexander v. Louisiana, supra; Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed. 567 (1970); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). The trial court also found that the judges chose forepersons on the subjective basis of whom they knew best, and if they did not know anyone on the venire list, most would consult with one of the other judges. Since no lists were kept, none of the judges knew whom the other judges had appointed, and they were unaware of the problem of underrepresentation of minorities as grand jury forepersons. As a result, the trial court judges failed to take the opportunity to acquaint themselves with a representative number of African-Americans on the grand jury venire that were qualified to serve as forepersons. See Rideau v. Whitley, supra.
The defect was not in the individual judges, but in the system set up by the pre 1999 version of La.C.Cr.P. art. 413(B) that allowed untrammeled discretion in the trial judge in selecting the foreperson. There is no evidence that the trial judges selected unqualified grand jurors. But, because the evidence shows that the trial judges were subjective in exercising their discretion, the trial court's finding that the state had not rebutted the presumption of discrimination, was supported by the evidence and the law, and was not an abuse of discretion.

CONCLUSION
For the foregoing reasons, we affirm the trial court's sustaining of the defendant's motion to quash. Nothing in this order should be interpreted as preventing the state, in its discretion, from obtaining a superseding indictment to cure any potential or perceived defect in the present indictment.
AFFIRMED.
GASKINS, J., dissents with reasons.
GASKINS, J., dissenting.
I respectfully dissent from the majority's opinion. I agree that at the time this *319 defendant was indicted, the selection of the grand jury foreman was discriminatory. The fallacy in the majority's opinion is that the race of the grand jury foreman, standing alone, violates this defendant's constitutional rights. The grand jury foreman's duties in Louisiana are purely ministerial. Hobby v. U.S., 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984). A careful reading of Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998) does not state that failure to elect a minority grand jury foreman violates the defendant's rights. Campbell, supra, does provide that when the grand jury foreman is subjectively picked from the grand jury pool, and the rest of the grand jury is randomly selected, this method may shape the composition of the grand jury. We must then look to the racial makeup of the grand jury to see if the discriminatory selection of the foreman did adversely affect the racial makeup of the grand jury.
The grand jury that indicted the defendant was composed of six whites and six African-Americans. The defendant did not make a prima facie case of discrimination based on these figures, especially since the voter registration pool in 1988 was 74% white and 25% African-American.
Applying the test set forth in Campbell, supra, the discriminatory selection of the grand jury foreman did not adversely affect the racial makeup of the grand jury that indicted the defendant. I would reverse the trial court's quashing of the indictment.

APPLICATION FOR REHEARING
Before NORRIS, C.J., GASKINS, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing Denied.