DECISION.
{¶ 1} Petitioner-appellant Gary L. Hughbanks, Jr., has taken the instant appeal from the judgment of the Hamilton County Court of Common Pleas denying his petition for postconviction relief. On appeal, Hughbanks advances three assignments of error, in which he challenges the denial of his motion seeking the recusal or disqualification of Hamilton County's common pleas judges to rule on his petition and the dismissal of his petition without discovery or an evidentiary hearing. Finding no merit to any aspect of these challenges, we affirm the judgment of the court below.
{¶ 2} In July of 1998, a Hamilton County jury found Hughbanks guilty on two counts of aggravated murder and a single count of aggravated burglary in connection with the 1987 stabbing deaths of William and Juanita Leeman. The trial court imposed, with respect to the aggravated-murder convictions, sentences of death. This court upheld Hughbanks's convictions on direct appeal. See State v. Hughbanks (Dec. 3, 1999), 1st Dist. No. C-980595. His appeal to the Ohio Supreme Court, filed in January of 2000, remains pending.
{¶ 3} In July of 2000, Hughbanks filed with the common pleas court an R.C. 2953.21 petition to vacate or set aside his convictions. In his petition, as subsequently amended, he presented forty-two claims for relief. On May 8, 2001, the court dismissed the petition, and this appeal followed.[1]
 I. DISQUALIFICATION
{¶ 4} Hughbanks contends in his first assignment of error that the common pleas judge who presided over his postconviction proceeding "erred when she failed to recuse and/or disqualify herself and all Hamilton County Common Pleas judges from the postconviction proceedings." This challenge is feckless.
{¶ 5} Hughbanks contended, in the first claim for relief advanced in his July 2000 postconviction petition, that Hamilton County, from 1982 through 1998, discriminated on the basis of gender and race, in violation of the due-process, equal-protection, and fair-cross-section guarantees of the state and federal constitutions, by permitting the presiding common pleas judge to select grand-jury forepersons for capital cases from outside the annual grand-jury list, as authorized by R.C. 2939.02. In August of 2000, he filed in the common pleas court a "[m]otion" requesting that the judge presiding over his postconviction petition and "all of the judges of the Hamilton County Court of Common Pleas voluntarily recuse and/or disqualify themselves from presiding over his pending post-conviction action." In support of the motion, he argued that the Code of Judicial Conduct required disqualification, because the judges' role in selecting the grand-jury foreperson called into question their ability to be impartial in determining his postconviction claims. The court denied the motion in October of 2000.
{¶ 6} Hughbanks then pursued the matter of disqualification of the common pleas bench by filing with the Ohio Supreme Court an affidavit of bias and prejudice. On March 30, 2001, the chief justice of the supreme court denied the prayer for disqualification.
{¶ 7} Section 5(C), Article IV of the Ohio Constitution confers upon the Chief Justice of the Ohio Supreme Court or his designee the authority to "pass upon the disqualification of any judge of the * * * courts of common pleas * * * ." R.C. 2701.03 prescribes the procedure by which a party may seek disqualification of a common pleas judge, providing in relevant part as follows: "(A) If a judge of the court of common pleas allegedly * * * has a bias or prejudice for or against a party to a proceeding pending before the court * * * or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court * * * ."
{¶ 8} The state's constitution confers solely upon the chief justice of the supreme court or his designee the authority to pass upon the disqualification of a common pleas judge. See Beer v. Griffith
(1978), 54 Ohio St.2d 440, 377 N.E.2d 775. Therefore, this court has no jurisdiction to review the common pleas court's denial of Hughbank's "[m]otion to * * * [r]ecuse and/or [d]isqualify" the county's common pleas bench. See id. at 441-442, 377 N.E.2d 775; accord Goddard v.Children's Hosp. Med. Ctr. (2000), 141 Ohio App.3d 467, 751 N.E.2d 1062.
{¶ 9} Moreover, the chief justice addressed and ultimately dismissed Hughbank's affidavit of bias and prejudice on the ground that it was not well taken. This decision is res judicata as to the question of disqualification. See State v. Getsy (1998), 84 Ohio St.3d 180, 185,702 N.E.2d 866. We, therefore, overrule the first assignment of error.
II. DISMISSAL OF THE PETITION
{¶ 10} In his second assignment of error, Hughbanks contends that the common pleas court erred in dismissing his postconviction petition. In his third assignment of error, he contends that the court erred in applying the doctrine of res judicata and in denying his requests for discovery and for an evidentiary hearing. We address these challenges together and find them untenable.
{¶ 11} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. See R.C.2953.21(A). Therefore, "the violation upon which the petitioner relies to establish his right to relief must be of constitutional dimension, and it must have occurred at the time the petitioner was tried and convicted of a criminal offense." State v. Powell (1993), 90 Ohio App.3d 260, 264,629 N.E.2d 13. A postconviction claim is subject to dismissal without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. See R.C. 2953.21(C); State v. Pankey
(1981), 68 Ohio St.2d 58, 428 N.E.2d 413; State v. Jackson (1980),64 Ohio St.2d 107, 413 N.E.2d 819.
A. Res Judicata
{¶ 12} In the proceedings below, the common pleas court premised its denial of the bulk of Hughbanks's claims for relief on the doctrine of res judicata. The Ohio Supreme Court in State v. Perry (1967),10 Ohio St.2d 175, 226 N.E.2d 104, declared that the doctrine of res judicata applies to postconviction proceedings and held that, under the doctrine, "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial [that] resulted in that judgment of conviction, or on an appeal from that judgment." Id., paragraph nine of the syllabus. A claim for relief advanced in a postconviction petition is thus subject to dismissal without an evidentiary hearing under the doctrine of res judicata, when it presents a matter that could fairly have been determined without resort to evidence dehors the record. See State v. Cole (1982),2 Ohio St.3d 112, 443 N.E.2d 169, syllabus; Perry, supra, paragraph nine of the syllabus.
{¶ 13} Hughbanks offered outside evidence in support of each of his forty-two claims for relief. A postconviction petitioner may resist dismissal of a postconviction claim under the doctrine of res judicata by submitting outside evidence in support of the claim. But the mere submission of such evidence will not, in and of itself, preclude the application of the doctrine of res judicata to deny the claim. Evidence dehors the record submitted in support of a postconviction claim must be "competent, relevant and material" to the claim, and it must "meet some threshold standard of cogency," i.e., it must be more than "marginally significant," and it must "advance the * * * claim beyond mere hypothesis and a desire for further discovery." State v. Coleman (Mar. 17, 1993), 1st Dist. No. C-900811. Moreover, such evidence must be other than cumulative of or alternative to evidence presented at trial. See Statev. Combs (1995), 100 Ohio App.3d 90, 98, 652 N.E.2d 205. And it "must be more than evidence [that] was in existence and available to the defendant at the time of trial and which could and should have been submitted at trial if the defendant wished to make use of it." Coleman, supra. Finally, the submission of evidence dehors the record in support of a postconviction claim will not preclude the application of the doctrine of res judicata to deny the claim if the claim could fairly have been determined on direct appeal from the judgment of conviction, based upon information contained in the trial record. See Cole, supra, syllabus;Perry, supra, paragraph nine of the syllabus.
1. Grand Jury Proceedings
{¶ 14} In his first postconviction claim, Hughbanks contended that Hamilton County, from 1982 through 1998, discriminated on the basis of gender and race, in violation of the due-process, equal-protection, and fair-cross-section guarantees of the state and federal constitutions, by permitting the presiding common pleas judge to select grand-jury forepersons for capital cases from outside the list of prospective grand jurors, as authorized by R.C. 2939.02. In his second claim, he contended that the indictment upon which he had been convicted had been returned by an improperly constituted grand jury, because the grand jury had consisted of fewer grand jurors than the law required, and because one of the grand jurors had been selected from outside the list of prospective grand jurors. In his third claim, he assailed his indictment on the ground that the foreperson of the grand jury had failed, in violation of R.C. 2939.20, to "subscribe his name as foreman."
{¶ 15} The evidence submitted in support of these claims was in existence and available to the defense at the time of Hughbanks's trial. See Coleman, supra. Therefore, the claims were subject to dismissal under the doctrine of res judicata, when they could have been raised by the defense at trial.[2] See Perry, supra, paragraph nine of the syllabus.
2. Penalty-Phase Instructions
{¶ 16} In his tenth claim, Hughbanks sought relief on the ground that the jury, in recommending the imposition of sentences of death, "failed to understand and * * * to follow the mitigation phase instructions." In support of this claim, he offered the affidavits of his father and brother, the affidavit of a linguistics professor who had analyzed the Ohio Jury Instructions pertaining to the death penalty, the affidavit of a criminal defense attorney experienced in capital murder cases, and the affidavits of seven jurors, along with the completed prospective-juror questionnaire of one of the attesting jurors.
{¶ 17} Hughbanks's father and brother attested in their affidavits to their belief that Hughbanks was not guilty of the murders. The affidavits were not cogent to the tenth claim, because they did not materially advance the contention that the penalty-phase instructions had been confusing or indecipherable to the jury.
{¶ 18} The affidavits of the linguistics professor and the defense attorney presented "essentially * * * notarized argument[s]" that could have been advanced at trial or on appeal. Therefore, neither affidavit constituted outside evidence that precluded dismissal of the tenth claim under the doctrine of res judicata. See State v. Bies (June 30, 1999), 1st Dist. No. C-980688.
{¶ 19} Hughbanks offered the jurors' affidavits and questionnaire to show the potential and actual effect upon the jurors' minds of the alleged linguistic deficiencies in the challenged penalty-phase instructions. Evid.R. 606(B) governs the competency of a juror to testify: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes." Evid.R. 606(B) is subject to the exception embodied in the aliunde rule, which permits a juror to offer testimony impeaching his verdict upon the presentation of impeachment evidence from a competent source other than a juror. SeeState v. Kehn (1977), 50 Ohio St.2d 11, 18, 361 N.E.2d 1330, certiorari denied (1977), 434 U.S. 858, 98 S.Ct. 180; State v. Poindexter (Mar. 6, 1991), 1st Dist. No. C-890734.
{¶ 20} Neither the affidavit of the linguistics expert nor the affidavit of the defense attorney constituted evidence aliunde, when the averments of neither expert were based on firsthand knowledge of the jurors' deliberations. See State v. Mills (Mar. 15, 1995), 1st Dist. No. C-930817. Nor did the affidavits of Hughbanks's father and brother provide evidence aliunde. Their statements in their affidavits that they did not believe that Hughbanks was guilty of the murders did not impeach the jury's conclusion, based upon the challenged instructions, that sentences of death were the appropriate punishment for the murders.
{¶ 21} In the absence of evidence aliunde impeaching the jury's recommendations of sentences of death, Evid.R. 606(B) precluded consideration of the jurors' affidavits to show the effect upon the jurors' minds of the challenged instructions. And because none of the evidentiary matter submitted in support of the tenth claim constituted outside evidence that precluded dismissal of the claim under the doctrine of res judicata, we hold that the tenth claim was properly dismissed on that basis.
3. Challenges to Ohio's Death-Penalty Scheme
{¶ 22} In his twelfth, thirty-ninth and fortieth claims for relief, Hughbanks challenged the constitutionality of various aspects of the state's death-penalty scheme. In his twelfth claim, he contended that courts in Ohio generally, and in Hamilton County specifically, have imposed the death penalty upon a disproportionate number of racial minorities. In his thirty-ninth and fortieth claims, he challenged the constitutionality of the state's means of execution. And, in his thirteenth claim, he contended that the state's death-penalty scheme violates international law.
{¶ 23} The Ohio Supreme Court has held that execution by either electrocution or lethal injection does not run afoul of theEighth Amendment's proscription against cruel and unusual punishment. See Statev. Carter (2000), 89 Ohio St.3d 593, 608, 734, N.E.2d 345. Moreover, the evidence offered in support of each of these claims was not demonstrably unavailable at the time of trial. Thus, despite Hughbank's submission of supporting evidentiary matter, the twelfth, thirteenth, thirty-ninth and fortieth claims were subject to dismissal under the doctrine of res judicata, when they could fairly have been determined at trial. SeePerry, supra, paragraph nine of the syllabus.
4. Appointment for Psychiatric Examination
{¶ 24} In his thirty-sixth claim for relief, Hughbanks contended, in part, that he was denied various rights guaranteed under the Fifth andSixth Amendments, including the privilege against self-incrimination and the right to counsel, by the trial court's appointment of the Community Diagnostic and Treatment Center to conduct a psychiatric examination to assist the court in determining the appropriate disposition of his case. This claim, to the extent that it challenged the appointment, was subject to dismissal under the doctrine of res judicata, when it could fairly have been determined at trial or on direct appeal without resort to evidence dehors the record. See Cole, supra.
B. Ineffective Assistance of Counsel
{¶ 25} In the balance of his claims for relief, Hughbanks contended that defense counsel's performance during both the guilt and the penalty phases of his trial denied him the effective assistance of counsel. The Ohio Supreme Court in State v. Lytle (1976),48 Ohio St.2d 391, 358 N.E.2d 623, established a two-step inquiry into the question of whether a criminal defendant was deprived of the effective assistance of counsel at trial: "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant'sSixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Id. at 396, 358 N.E.2d 623; see, also, Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. Trial counsel's performance will not be deemed ineffective unless it can be shown that "counsel's representation fell below an objective standard of reasonableness," Strickland, supra at 689, 104 S.Ct. at 2065, and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, paragraph three of the syllabus.
1. Res Judicata
{¶ 26} In his fourteenth, seventeenth through nineteenth, twenty-first, twenty-second, twenty-ninth, thirtieth, and thirty-second through thirty-fourth claims for relief, Hughbanks contended that he was denied the effective assistance of counsel (1) by defense counsel's failure to raise at trial the challenge presented in his thirteenth claim to the state's death-penalty scheme in its alleged failure to operate in conformity with international law; (2) by counsel's failure to exercise peremptory challenges or challenges for cause to excuse various jurors; (3) by counsel's failure to object to misleading and inappropriate statements by the prosecution at voir dire and in its closing arguments during the penalty phase of the trial; (4) by counsel's own inappropriate statements, omissions, and conduct during voir dire and during the guilt and penalty phases of the trial; (5) by counsel's failure to adequately advance and advocate life-sentence options and parole eligibility or to object to the trial court's misstatements in that regard, and (6) by counsel's failure to seek admission of two defense exhibits. In his thirty-sixth claim, he challenged, in addition to the trial court's appointment of the Community Diagnostic and Treatment Center to conduct a psychiatric examination, his trial counsel's effectiveness in failing to object to the appointment. He also assailed counsel's failure to object to this appointment in his sixteenth claim. Finally, in his forty-second claim, he based his challenge to counsel's performance, in part, on counsel's failure to request, and to object to the trial court's failure to deliver, a penalty-phase instruction regarding the power of "a solitary juror" to "prevent a death penalty recommendation."
{¶ 27} The Ohio Supreme Court in State v. Cole, supra, syllabus, held that res judicata is an appropriate basis for the dismissal of a postconviction claim alleging counsel's ineffectiveness at trial, when the petitioner was represented by new counsel on appeal and the issue could fairly have been determined without evidence dehors the record. Hughbanks was represented by new counsel on appeal. The challenges to trial counsel's performance advanced in these claims, although supported by evidence dehors the record, presented matters that could fairly have been determined on direct appeal without resort to such evidence. We, therefore, hold that Hughbanks's fourteenth, seventeenth through nineteenth, twenty-first, twenty-second, twenty-ninth, thirtieth, and thirty-second through thirty-fourth claims for relief, along with the noted portions of his fifth, sixteenth, thirty-sixth and forty-second claims, were subject to dismissal under the doctrine of res judicata. SeeCole, supra, syllabus.
2. Grand Jury Proceedings
{¶ 28} In his fourth claim, Hughbanks contended that he was denied the effective assistance of counsel, when counsel failed to raise at trial the challenge advanced in his first claim to the discriminatory nature of the county's grand-jury-foreperson selection process. In his fifth claim, he contended that counsel was ineffective when they failed to raise at trial (1) the challenge presented in his second claim to his indictment by a grand jury consisting of fewer grand jurors than required by law and of one grand juror from outside the list of prospective grand jurors, and (2) the challenge presented in his third claim to the return of his indictment without the foreperson's signature.
 a.
{¶ 29} R.C. 2939.02 requires that grand jurors be "selected from the persons whose names are contained in the annual jury list and from the ballots deposited in the jury wheel, or in the automation data processing storage drawer, or from the names contained in an automated data processing information storage device * * * ." The statute permits a common pleas judge to select as the foreperson of a grand jury "any person who satisfies the qualifications of a juror," but whose name isnot included among the names contained in the data bases listed above. Crim. R. 6(C) similarly permits "the administrative judge of the general division of * * * the common pleas court" to appoint as foreperson "any qualified elector or one of the [grand] jurors."
{¶ 30} In support of the challenge to counsel's performance advanced in his fourth claim, Hughbanks asserted and offered evidence to show that, in Hamilton County, from 1982 through 1998, the presiding common pleas judge exercised the permissive authority conferred by R.C.2939.02 and Crim.R. 6 to select grand-jury forepersons for capital cases from outside the "grand jury venire," and that, as a consequence, African-American and female residents of the county were "seriously underrepresented" as grand-jury forepersons. This statistical disparity served as the basis for his contention that his conviction was procured by a procedure that contravened his due-process and equal-protection rights, along with his fair-cross-section right and unstated (and, to us, unclear) aspects of his "8th Amendment, and effective assistance of counsel rights."
{¶ 31} Hughbanks cites in support of this contention the decision of the United States Supreme Court in Campbell v. Louisiana (1998),523 U.S. 392, 118 S.Ct. 1419. There, the Court held that a white criminal defendant had third-party standing to mount an equal-protection challenge, as well as standing to bring a due-process challenge, to racial discrimination in the selection of a grand-jury foreperson.[3]
{¶ 32} R.C. 2939.02 provides for the selection of grand jurors in the following manner: "At the time of the selection of the persons who are to constitute the grand jury, the commissioners of jurors shall draw from the jury wheel * * * ballots containing the names of not less than twenty-five persons. The first fifteen persons whose names are drawn shall constitute the grand jury, if they can be located and served by the sheriff, and if they are not excused by the court or a judge of the court. If any of the first fifteen persons whose names are so drawn are not located or are unable to serve and are for that reason excused by the court or by a judge of the court, whose duty it is to supervise the impaneling of the grand jury, the judge shall then designate the person whose name next appears on the list of persons drawn, to serve in the place of the person not found or excused and shall so continue to substitute the names of the persons drawn in the order in which they were drawn, to fill all vacancies resulting from persons not being found or having been excused by the court or the judge of the court, until the necessary fifteen persons are selected to make up the grand jury."
{¶ 33} The evidence submitted in support of the fourth claim did not demonstrate when in the grand-juror-selection process the court selected the foreperson of the grand jury that indicted Hughbanks. But the evidence did include a list, certified by the Hamilton County Clerk of Courts, that showed the "qualifi[ed] * * * Electors, residents of [the] County, who * * * were legally drawn from the Jury Wheel * * * to serve as GRAND Jurors" for the month of September 1997. That list contained, along with the names of the other grand jurors, the name of the woman selected to serve as foreperson of the grand jury. Therefore, the foreperson of the grand jury, while perhaps not selected from the ranks of the already-seated grand jurors, was not, as Hughbanks contended, selected from outside the "grand jury venire."
{¶ 34} Moreover, Crim.R. 6(C), which outlines the duties of a grand-jury foreperson, grants the foreperson "the power to administer oaths and affirmations" and requires the foreperson to "sign all indictments"; to keep, or to designate another grand juror to "keep[,] a record of the number of jurors concurring in the finding of every indictment[;] and upon the return of the indictment[,] [to] file the record with the clerk of court * * * ." Thus, the duties imposed upon a grand-jury foreperson are essentially clerical in nature, conferring no more authority than that possessed by the other grand jurors to determine, or to influence the determination, to indict.
{¶ 35} If a grand-jury foreperson is selected from within the ranks of a properly constituted grand jury, and the foreperson's role is essentially ministerial, purposeful discrimination in the selection of a grand-jury foreperson will not provide a basis for reversing a conviction or dismissing an indictment. See Hobby v. United States (1984),468 U.S. 339, 344, 104 S.Ct. 3093. If, on the other hand, the foreperson is selected from outside the system used to compose the balance of the grand jury, but possesses the same voting power as the other grand jurors and takes on, by virtue of the status of foreperson, duties that are merely ministerial in nature, we must treat a claim of discrimination in the selection of the grand-jury foreperson as one alleging discrimination in the composition of the grand jury itself. See Campbell v. Louisiana
(1998), 523 U.S. 392, 396-397, 118 S.Ct. 1419.
{¶ 36} A state may not, consistent with the due-process guarantee of the Fourteenth Amendment, subject a criminal accused to trial upon an indictment returned by a grand jury composed in a discriminatory manner in contravention of the United States Constitution. See Peters v. Kiff
(1972), 407 U.S. 493, 501, 92 S.Ct. 2163. Indictment by a grand jury from which members of an identifiable group have been purposefully excluded constitutes discrimination that denies an accused his right to equal protection under the law. See Castaneda v. Partida (1977), 430 U.S. 482,492-495, 97 S.Ct. 1272.
{¶ 37} To prove purposeful discrimination in the selection of grand jurors, the accused must demonstrate that the procedure employed to select the grand jurors resulted in "substantial underrepresentation" of an "identifiable group." To show substantial underrepresentation, and thus establish a prima facie case of purposeful discrimination, the accused must (1) "establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied," (2) prove "the degree of underrepresentation * * * , by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time," and (3) support "the presumption of discrimination raised by the statistical showing" with proof that "the selection procedure * * * is susceptible of abuse or is not racially neutral." Once the defendant has established a prima facie case of discriminatory purpose, the burden shifts to the state to rebut that case. Id. at 494-495, 97 S.Ct. 1272.
{¶ 38} Hughbanks offered in support of his petition evidence to show that African-American and female residents of the county were "seriously underrepresented" as grand-jury forepersons. The record is unclear, however, concerning the precise procedure employed by the county to select the foreperson for the grand jury that indicted him. And Hughbanks presented no evidence that that procedure, whatever its particulars, resulted in substantial underrepresentation of either African-Americans or women on his grand jury or on grand juries over a significant period of time.
{¶ 39} Thus, the evidence offered in support of the fourth claim failed to establish a prima facie case of purposeful discrimination in the selection of grand jurors. Accordingly, we conclude that Hughbanks's counsel, in failing to raise this issue at trial, cannot be said to have violated a substantial duty to their client. See Lytle, supra at 396-397, 358 N.E.2d 623. We, therefore, hold that the common pleas court properly dismissed the fourth claim without an evidentiary hearing.
 b.
{¶ 40} Hughbanks predicated the challenge to counsel's performance in his fifth claim on R.C. 2939.02 and 2939.20. R.C. 2939.02 requires, in relevant portion, that a grand jury consist of fifteen grand jurors, "selected from the persons whose names are contained in the annual jury list and from the ballots deposited in the jury wheel * * * ." R.C. 2939.20
requires the grand-jury foreperson to sign the indictment.
{¶ 41} The evidence submitted in support of this claim showed that, contrary to Hughbanks's assertion, each of the grand jurors on the grand jury that indicted him was selected from the list of prospective grand jurors drawn from the jury wheel, in conformity with R.C.2939.02.[4] But the evidence also confirmed that the grand jury consisted of only eleven grand jurors, and that the deputy foreperson of the grand jury, rather than the foreperson, signed Hughbanks's indictment.
{¶ 42} The Ohio Supreme Court, in State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph one of the syllabus, declared that R.C. 2939.02 and 2939.20 are procedural, not substantive, provisions and held that the statutes are superceded by Crim.R. 6 to the extent that they conflict with the rule. Unlike R.C. 2939.02 and 2939.20, Crim.R. 6 requires only nine grand jurors and provides for the appointment of a "foreman," who is required to "sign all indictments," and a "deputy foreman," who is empowered to "act as foreman" in the appointed foreperson's absence. See Crim.R. 6(A) and 6(C).
{¶ 43} Thus, the grand jury that indicted Hughbanks was legally constituted, in its members and in its numbers. And, in the absence of proof that the deputy foreperson, in signing the indictment, acted outside the scope of the authority conferred by Crim.R. 6(C), we must conclude that the indictment was legally executed. Under these circumstances, Hughbanks's counsel, in failing to raise these issues at trial, cannot be said to have violated a substantial duty to their client. See Lytle, supra at 396-397, 358 N.E.2d 623. We, therefore, hold that the common pleas court properly dismissed the fifth claim for relief without an evidentiary hearing.
3. Voir Dire
{¶ 44} In his seventh and eighth claims for relief, Hughbanks contended that he was denied the effective assistance of counsel, when counsel failed to conduct a voir dire of prospective jurors adequate to identify, and to provide a basis for challenging, those jurors who were unqualified or were unwilling to consider mitigation evidence or to follow penalty-phase instructions. In his thirty-seventh claim, he assailed counsel's performance in failing to question juror McMurray during voir dire about various responses offered by the juror in his prospective-juror questionnaire. In support of these claims, Hughbanks submitted the affidavit of the linguistics professor and the criminal defense attorney, the affidavits of seven jurors (including that of juror McMurray), and juror McMurray's prospective-juror questionnaire.
{¶ 45} The record shows, contrary to Hughbanks's assertion, that both the prosecution and defense counsel, during voir dire, directly confronted McMurray with, and probed at length, statements in his prospective-juror questionnaire that suggested a bias in favor of the prosecution. Neither party could shake him from his conviction that he would approach the case objectively and would follow the law. Therefore, the evidence offered by way of the questionnaire was merely cumulative of that contained in the record.
{¶ 46} Moreover, as we determined supra, Evid.R. 606(B) barred consideration of the jurors' affidavits attesting to their deliberative processes. See Poindexter, supra. And the affidavits of the linguistics professor and the defense attorney constituted neither evidence aliunde, see Mills, supra, nor outside evidence that precluded dismissal of these claims under the doctrine of res judicata. See Bies, supra.
{¶ 47} Thus, the challenges to counsel's performance presented in the seventh, eighth, and thirty-seventh claims were either unsupported by evidence outside the record or presented matters that could have been raised on direct appeal. These claims were, therefore, subject to dismissal under the doctrine of res judicata.
4. Guilt- and Penalty-Phase Evidence
{¶ 48} In his sixth and thirty-fifth claims, Hughbanks contended that he was denied the effective assistance of counsel, when his trial counsel failed to adequately investigate and present, during both the guilt and the penalty phases of the trial, evidence of his history of alcohol abuse, evidence of law enforcement's belief that he had been drunk when he committed the crimes, and evidence of the "consideration" received by his brother for "turning [him] in."
{¶ 49} These claims relied principally upon the affidavits of Hughbanks's father and brother, both of whom had, by approaching law enforcement and implicating Hughbanks in the murders, set in motion the process that had resulted in his apprehension, trial, and conviction for the crimes, over ten years after their commission. Two years later, Hughbanks's brother, Larry, executed an affidavit in which he asserted that he had implicated Hughbanks, not upon a belief that Hughbanks had murdered the Leemans, but to curry favor with law enforcement and thereby to avoid imprisonment for a probation violation, and to avenge Hughbanks's unspecified role in Larry's earlier incarceration for the offense of gross sexual imposition. Larry also attested to Hughbanks's history of confessing, while intoxicated, to conduct of which he was not guilty. He further averred that Hughbanks's counsel had disregarded his attempts to communicate these matters to them before trial.
{¶ 50} Hughbanks's father, in his affidavit, similarly averred that he did not really believe that his son had murdered the Leemans. He stated that he had implicated his son in the murders in a fit of pique over Hughbanks's involvement with a woman with whom he had also been "romantically involved." He asserted that he had not contacted Hughbanks's counsel with this information, because counsel had advised his wife that they did not wish to speak to him.
{¶ 51} On direct appeal, Hughbanks challenged trial counsel's performance in agreeing not to require the state to produce his father and his brother as witnesses at trial. We rejected this challenge because the record of the proceedings at trial would not allow for a conclusion that Hughbanks had been prejudiced, or that counsel had not based their "strategic" decision not to compel the witnesses' testimony on a sound reasoning process. See State v. Hughbanks, supra.
{¶ 52} The evidence submitted in support of the sixth and thirty-fifth claims does not alter that assessment. When viewed with the overwhelming evidence of guilt adduced at trial, including Hughbanks's confession to the crimes, the evidence offered in support of these claims cannot be said to demonstrate a reasonable probability that, but for counsel's failure to present this evidence at trial, the results of the trial would have been different. See Bradley, supra. Thus, Hughbanks failed to sustain his initial burden of demonstrating substantive grounds for relief. Accordingly, we conclude that the common pleas court properly dismissed the sixth and thirty-fifth claims without an evidentiary hearing. See Pankey, supra; Jackson, supra.
5. Penalty-Phase Omissions
{¶ 53} In his sixteenth and thirty-first claims, Hughbanks contended that he was denied the effective assistance of counsel, when his counsel failed to adequately cross-examine and failed to object to or to present testimony to rebut the trial testimony of the psychiatrist appointed, through the Community Diagnostic and Treatment Center, to examine him for the purpose of assisting the court in determining the appropriate disposition of his case. In his twentieth claim, Hughbanks contended that he was denied the effective assistance of counsel, when his counsel failed, during the penalty phase of the trial, to adequately explain, to present evidence concerning, or to advocate unspecified mitigating factors. In his twenty-third through twenty-eighth claims, he assailed counsel's performance in failing to investigate, prepare, and present, during the penalty phase of his trial, evidence concerning his history, character and background and evidence concerning his substance dependency and the bipolar and post-traumatic-stress disorders under which he suffered and the effect of these disorders on his conduct at the time of the offenses and on his ability to function while incarcerated. In his forty-second claim, Hughbanks contended, in part, that he was denied the effective assistance of counsel, when his counsel failed to play for the jury that portion of his audiotaped statement that included his conversation with his parents, which, he argued, was "mitigating" in the sense that it would have "humanize[d]" him and revealed to the jury his "feelings" and "troubled history."
{¶ 54} Much of the evidence that Hughbanks offered in support of these postconviction claims, including evidence probative of his mental-health history, his family background, and his substance-abuse problem, had been presented at trial. Moreover, proof of the existence of mitigation evidence that was not presented at trial, but that might have supported an alternative theory of mitigation, does not constitute proof of counsel's ineffectiveness, when, as here, the record demonstrates that counsel presented the case in mitigation competently in view of the facts available to them. See State v. Post (1987), 32 Ohio St.3d 380, 388-389,513 N.E.2d 754.
{¶ 55} Nothing in the record before us or in the evidentiary material offered in support of these claims presents a reasonable probability that, but for the alleged omissions of counsel, the result of the penalty phase of Hughbanks's trial would have been different. SeeBradley, supra. Thus, Hughbanks failed to sustain his initial burden of demonstrating substantive grounds for relief. We, therefore, hold that the common pleas court properly dismissed, without an evidentiary hearing, his sixteenth, twentieth, twenty-third through twenty-eighth, and thirty-first claims, along with the noted portion of his forty-second claim. See Pankey, supra; Jackson, supra.
C. Prosecutorial Misconduct — Withholding Favorable Evidence
{¶ 56} In his ninth and thirty-eighth claims for relief, Hughbanks contended that the prosecution's failure to disclose to the defense certain evidence contradictory to its theory of the case denied him his constitutionally secured right to a fair trial. In his eleventh and fifteenth claims, he challenged his trial counsel's effectiveness in failing to unearth this evidence and to present it at trial.
{¶ 57} The fair-trial guarantee of the Due Process Clause imposes upon the prosecution an obligation to disclose to a criminal accused evidence material to the accused's guilt or innocence. See Brady v.Maryland (1963), 373 U.S. 87, 83 S.Ct. 1194. Such evidence is "material" only if there is a "reasonable probability" that its disclosure would have changed the outcome of the trial. See United States v. Bagley
(1985), 473 U.S. 667, 682, 105 S.Ct. 3375. The determination of whether such a probability exists entails an inquiry not into whether a trial with the undisclosed evidence would have yielded a different verdict, but into whether the evidence, "considered collectively," "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley (1995), 514 U.S. 419,434-436, 115 S.Ct. 1555.
{¶ 58} The prosecution presented at trial evidence that, on the evening of May 13, 1987, Mr. and Mrs. Leeman died of multiple stab wounds sustained in the course of a struggle with an intruder in their home. The murderer eluded police, and the murders remained unsolved for ten years, until Hughbanks's brother and father, and then other family members, implicated him in the crimes, and Hughbanks, under police interrogation, confessed to the murders. Hughbanks's pretrial attempt to suppress his confession was unsuccessful, and he did not testify at trial.
{¶ 59} In support of his postconviction claims, Hughbanks offered a number of newspaper articles published in the wake of the murders and a copy of a composite drawing of a man seen near the scene of the crimes. Hughbanks contended that the news articles and the composite drawing revealed "evidence" that contradicted the prosecution's theory of the case against him. This "evidence" included statements by the Leemans' neighbors that they had seen Mrs. Leeman in her yard between 8:30 and 9:15 on the night of the murders; statements by law enforcement authorities that the Leemans' house had been largely undisturbed, that the front and rear doors of the house had been unlocked, and that Mr. Leeman's wallet had not been taken; statements by the police reflecting their belief that fingerprints discovered in the house were those of the murderer, and that the murderer's clothing would have been bloody; and circulation by the police of the composite drawing that, Hughbanks contended, bore no resemblance to him.
{¶ 60} The pivotal issue at trial was not how the murders had been committed, but who had committed them. The bulk of the undisclosed evidence related to the particulars of the murders, rather than to Hughbanks's identity as their perpetrator. Based upon this fact and our review of the record of the proceedings below, we conclude that the undisclosed evidence, viewed collectively, was not "material" in that it could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See Kyles v. Whitley, supra at 435, 115 S.Ct. 1555.
{¶ 61} Upon our conclusion that the absence of the undisclosed evidence was not outcome-determinative, we conclude that Hughbanks was denied neither a fair trial by the prosecution's failure to disclose it, see Brady v. Maryland, supra at 87, 83 S.Ct. 1194, nor the effective assistance of counsel by defense counsel's failure to discover it and to present it at trial. See State v. Bradley, supra, paragraph three of the syllabus. Accordingly, we hold that the common pleas court properly denied the ninth, eleventh, fifteenth, and thirty-eighth claims for relief without an evidentiary hearing.
D. Cumulative Error
{¶ 62} In his forty-first claim for relief, Hughbanks contended that the cumulative effect of the constitutional deprivations alleged in the petition's other claims denied him unspecified rights secured by theFourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution. This catch-all claim depended upon, and thus fell with, the petition's other claims. We, therefore, hold that the forty-first claim for relief was subject to dismissal without an evidentiary hearing.
E. Discovery
{¶ 63} In his third assignment of error, Hughbanks assailed not only the dismissal of his claims without an evidentiary hearing, but also the common pleas court's refusal to permit him to conduct discovery to "factually develop" those claims. The postconviction statutes do not grant a postconviction petitioner the right to conduct discovery for the purpose of gathering evidence to establish an entitlement to an evidentiary hearing. See State v. Byrd (2001), 145 Ohio App.3d 318,332-333, 762 N.E.2d 1043 And the failure of the statutes to so provide does not contravene any state or federal constitutional right. See Statev. Jones (Dec. 29, 2000), 1st Dist. No. C-990813. We, therefore, conclude that the common pleas court properly denied Hughbanks's requests for discovery.
F. Conclusion
{¶ 64} Upon our determination that the common pleas court properly denied each postconviction claim without an evidentiary hearing, we hold that the court properly dismissed Hughbanks's postconviction petition. Having thus concluded that Hughbanks's petition was properly dismissed without an evidentiary hearing, and that he was not entitled to discovery in the initial stages of his postconviction proceeding, we overrule the second and third assignments of error.
{¶ 65} In turn, finding no merit to any of the assignments of error advanced on appeal, we affirm the judgment of the court below.
{¶ 66} Judgment affirmed.
Doan, P.J., Hildebrandt and Gorman, JJ.
[1] This court originally set arguments in this case for June 26, 2002. On June 18, Hughbanks filed with the Ohio Supreme Court an affidavit of bias and prejudice, by which he sought the disqualification of all members of this court. We postponed arguments in the appeal pending the chief justice's disposition of the affidavit.
[2] As we noted supra, Hughbanks was convicted in July of 1998. Thus, Hughbanks's trial took place after the decision of the United States Supreme Court, in April of that year, in Campbell v. Louisiana (1998),523 U.S. 392, 118 S.Ct. 1419, in which the Court declared that a white criminal defendant had third-party standing to mount an equal-protection challenge, as well as standing to bring a due-process challenge, to racial discrimination in the selection of a grand jury.
[3] The Court left for another day the issue of the whether Campbell also had standing to raise a fair-cross-section claim. We do so as well, because Hughbanks has done little more in presenting this aspect of his claim than to invoke the phrase.
[4] Hughbanks's complaint about the absence of grand juror "Milton" from the list of prospective grand jurors is disingenuous at best. His own evidence showed that the grand jury that indicted him included a "Harold Hilton," whose name appeared on the list of prospective grand jurors, but was misspelled "Harold Milton" on one of four grand-jury-compensation lists.